Good morning, Your Honors. My name is Howard Davis. I represent the petitioner Ana Lizama Rivas and I'd like to reserve about two minutes for rebuttal. Okay, keep your eye on the clock. Okay. In this particular case, the immigration judge found that Ana had been persecuted in the past, but denied asylum for a variety of reasons. The immigration judge found that Ana had been persecuted in the past, but denied asylum for a variety of reasons. But I do find that when you put everything together, there's not a 50.1% chance that she will be persecuted on her return. The BIA said she hadn't shown that they were unwilling or unable. Isn't the BIA's finding different than that of the immigration judge? By the way, it helps you if it is. I'm sorry? Go ahead and answer the question. Well, the issue, I mean, the judge said that on page 98 of the record, did say, he was talking about the, said that the government is not indifferent to respondent, in fact, assisted her on two occasions, etc. But didn't the judge also say, I'm not finding, I'm not finding unwilling or unable, I'm just saying when you put all these facts together, I'm reading from... Right, yeah, at the bottom of the page. In other words, the actions of the government reduce the potential harm in this court's opinion. That's the IJ. The BIA says she hasn't shown that the government was unwilling or unable. My question is, are those the same finding or are those different findings? They are pretty much the same findings. They're different wordings. They are related. They're overlapped. So I'm not totally answering your question. I'm just, I'm sort of like Judge Kaczynski. I think you're, in the last case, I think you're digging yourself a hole. If they're different findings of fact, then the BIA engaged in inappropriate fact finding. If they're just another way of characterizing the IJ's finding, then you've got to demonstrate to us why that was not supported by substantial evidence. But go ahead. In terms of, I should go ahead and talk about why the BIA's finding... Go ahead and talk about whatever you want. You've answered my question. I'm just suggesting that I don't understand why you answered it that way. Okay, the board found... The correct answer. I'm sorry? Maybe you gave that answer because it's the correct answer. That's right. I mean, I just think that the issue here is whether or not the government is unable or unwilling to protect Anna. And that's how I read... So which part, if that's the issue, which part of unable and unwilling are we focusing on? Well, I'm... Plenty of evidence that they're willing. They've even arrested her persecutor and put him in jail. But the thing is that they're unable because the board is saying that, from Anna's personal experience, that the police responded effectively each time she reported the abuse committed by her husband. So the problem here with an effective response is, I mean, the term has to have some meaning, that there has to be some sort of basis on the results. What we have here is that, in order for the Salvadoran authorities' action to deserve to be called an effective response, there had to be some sort of reasonable, there had to be some results here. So what's our measuring stick for that? I'm sorry? What's our measuring stick? Let's assume that, for purposes of discussion, the United States is willing and able to control domestic abusers. But sometimes, once they get out of prison, they commit the offense again. What's our measuring stick? Okay, but the measuring stick that should be, the measuring stick is whether or not there's an effective system in place. And one of the themes of the country reports is that, yes, there is a desire to improve things. But year after year, you have the report saying, this is going from 2005 to 2012, which is saying, yes, the government wants to do X, but the enforcement is ineffective year after year. That they don't, one of the issues here is that they don't prosecute criminally the domestic abusers. They prefer to do some sort of a mediation. So here, in the first instance that Anna reports to the police, after having been laid up in the hospital for about a week, there's some procedure. It's not clear, but he's in, that the husband is in some form of detention for about a year. After he's sprung, it's not clear if it's part of any criminal system or anything like that.  And what happens after that is there's some form of a mediation. And then with the mediation, there's, he doesn't even sign off on it. And then after that, he continues to. I was going to ask you about the signing off. I don't know what the procedure is in El Salvador. But the judge said, even if you don't sign this, it's a binding order, right? Correct. So, I mean, I'm not sure that that demonstrates government unwillingness to control. It sort of cuts the other way for me. It shows that the government, even when it has recalcitrant people in front of it who won't sign orders, reminds them that they're bound by them. Right, but. That fact just doesn't get me anywhere. But the problem is, is that Victor continues to. Right, that's the fact. And so there's really no incentive for him to. That's the fact that it helps you. There's no incentive because there's no teeth to anything. And I understand that argument. Just stop for a second. I understand that argument. All I'm suggesting is that the fact that he refused to sign the document and that the judge said to him, nonetheless, even though you won't sign the document, you're bound by it, doesn't suggest to me unwillingness of the government. Right, and I'm not emphasizing that too much. I do mention that. I mean, but, and again, we have to take a look at the results. And in the results is, is that you have, you have someone who continues to abuse. And then after the, after the TRO is, the restraining order is signed, you can, and he threatens Anna. And it gets to the point where Victor's own parents help her to leave the country. Well, but, you know, stuff like that happens in this country as well. Right, but, and I understand that, Your Honor. And it's just that the United States has a, a more in place type of system there. I mean, you do see criminal prosecution all the time in the reports. Yeah. I mean, you want to focus on her situation. I mean, this is what your answer to judge Hurwitz. You know, I want to, you know, I'm not talking about the general situation. I want to focus on her situation. You don't want to hear the question? I am. I'm just, I'm acknowledging, right. I'm just, I apologize, Your Honor. The, the problem is once you focus on her situation, you can find similar situations anywhere. You can find similar situations in the United States. I mean, where husbands or domestic partners are recalcitrant, they get restraining orders, they get put in jail, you know, and they keep coming back. So, I don't, what does one case get you? Why does that prove that the government is unwilling or unable to restrain persecutors? We can't look at just her case. I mean, you have to say, you know, this is typical. This is, this is emblematic of what the government can or will not do. What does your single case get you? Well, again, one of the, and I'm not sure if I'm answering the question, but I mean, again, you're mentioning a, you're referencing a comparison in the United States. In the United States, again, there is a, there is a much, first of all, from a legal standpoint, there is much more, domestic abusers are more aggressively prosecuted here. There's also a growing culture, and this is also one of the problems, one of the big differences. You say that, but how do I know that? You say that they are more aggressively. I mean, we've got 50 states, and, you know, I don't know what the standards are like for protecting domestic partners in other parts of the country. So there's not a singly uniform standard. And how do I know? I mean, if you just focus on your case, how do I know that the United States has a more aggressive protections? I mean, I. But perhaps. And what makes, whatever they have, you know, why are we the gold standard? Anything less than we provide becomes persecution. Well, then, perhaps, I mean, perhaps we should look in the context of her country, then. Okay. And in the context of her country, I mean, again, the country background reports, and it's a combination. And I know I keep on coming back to that. That's where you should have started. The country background reports do demonstrate something in this regard. Yes. I mean, they do demonstrate that there is completely ineffective enforcement to protect someone like Anna, and there's a widespread culture that domestic violence is acceptable. And I see I have, I see I have less than two minutes here, so. Actually, you're on negative numbers. Oh, okay. Your time's up. Okay. We'll give it to the government. Good morning. May it please the court. My name is Jocelyn Wright. I'm here on behalf of Respondent, the United States Attorney General. The record does not compel the conclusion that the Salvadoran government must bear some responsibility for the treatment that Anna suffered, I mean, that Petitioner suffered at the hands of her common-law husband. The record instead establishes that in each and every time that she reported the incidents of domestic abuse, the government of El Salvador responded and responded effectively. Effectively or responded? I mean, I think this record is pretty clear that the government of El Salvador is willing to move against domestic abusers. What about Abel? In this case, it was able to do so, Your Honor. In the first incident that she reported, they actually came and arrested him. She was in the hospital, it resulted in her hospitalization for a week, she says, and apparently the government, the police came and arrested him. He was placed in jail for a year. His parental rights were suspended. Custody of the two children, yes, the one child, pardon me, custody of the child was given to the mother. He was never convicted of anything, right? Well, it's not clear. Apparently he wasn't convicted. The record doesn't reflect that. Right. The record reflects no criminal conviction, but there is, as the counsel has discussed and we've discussed in the brief, there is a family order, a family court order or a document. It's not clear what it is. It looks like it's a brief, but it's also some kind of narrative. But there is that document that states that after that incident, the government did respond effectively. He was incarcerated for a year, and that is in line with the criminal penalties for convictions of domestic violence. The BIA relied on the country reports, and it seems to me to have sort of cherry-picked from the country reports. I want you to address this. The country reports do, I think, establish that El Salvadoran law has changed. Authorities are much more willing to enforce laws against domestic violence. But the same country reports in the parts not quoted sort of say, but they haven't been very successful in this, and domestic violence is still a big problem and culture makes it such. How does that—so I'm looking at the unable part of the equation. Plenty of evidence of willing, but what about evidence of ability? Well, the board's decision also says that it acknowledges that there are two sides in the country. Specifically, although the report indicates that laws against domestic violence were not well enforced, and it acknowledges this, it focuses on the case before it and says petitioner in this case, her own personal experience reflects that the police responded effectively each time that she reported the abuse committed by her husband. But doesn't that go back to Judge Kaczynski's question? They didn't respond effectively each time because the last time she fled the country. Well, no, the last time that she reported it, she was able to get a restraining order. And according to her declaration, she says that she went to court many times after she got the restraining order. And so it indicates that there was a continuing enforcement. Well, but if in fact there is a condition in the country where the government, although willing, can't enforce the laws, do we say, well, they enforced them once in your case? It was sort of the converse of the question Judge Kaczynski asked. They enforced them once in your case, Ms. Rivas or Ms. Zama, and, you know, therefore, therefore you haven't shown the inability of the country to protect you. That may be a different scenario. In this case, I think the board appropriately focused on the fact that each time she reported it, the government was effective in its response. Why is it a different scenario? It seemed to me that that's exactly the scenario we have. Well, it doesn't say, it doesn't indicate, the record does not indicate whether she reported more than the two times that's being discussed. No, but as I understand Judge Hurwitz's question is, he was taking it as a given that in her case they performed adequately. Yes, and the question is, is that enough? If, in fact, countrywide, they are not doing an adequate job. The board didn't find an absence of probability of persecution. It found that there wasn't any evidence that the government was unwilling and unable to stop that persecution. So it seems to me focusing on her situation doesn't answer the question about whether they're able. Well, I think... It's got some evidence that they did something in the past, but does it demonstrate ability? I think that given that her case is the one before the board, the fact that in her case it was effective, does go towards whether or not the government of El Salvador has the ability to enforce its laws. Well, looking at the future, right? Yes. This is a forward-looking inquiry. Okay. Okay. So in predicting the future, do we have any reason to think that she will be treated differently than the rest of the population? If, in fact, there's ineffectiveness countrywide, does the fact that she happens to have gotten some effective relief in the past guarantee her any better than average for her country in the future? I wouldn't say guarantee, Your Honor, but at least... Does it portend that at all? Well, it's substantial. It would be the fact that there was an effective response and that she has... Why? If you win the lottery once, does that mean that you will win the lottery the next time and the next time after that? No, of course not. So why does the fact that she got some effective enforcement in the past mean that she's more likely than the rest of the population? Don't we, sort of, looking at the future, have to treat her likelihood of getting effective relief, ability to...the government's ability to control? Don't we look at, sort of, population-wide figures rather than her individual case? Well, you can, but past is probably to future. And in this case, the fact that she has the court order and the fact that once he violated it, she was able to get a restraining order, and the fact that the criminal judge apparently advised Victor that if he continued or any future violation of that order would result in criminal prosecution, I think those factors bear on her likelihood of getting... So would that still be valid? There's no expiration date on it, so I assume it is, Your Honor. I don't know. But again, the fact that these facts, these evidence in the records tends to indicate... Is that what the board presumed? Is the order still in effect? I don't think it was clear. I assume that it did because there was no expiration date on it, and it relied heavily on the fact that the order is in the record and was indicative of the government's response to her reporting of the abuse. Did the IJ make a finding that the government was unable? Yes, it did, Your Honor. Where is that? I'm looking at page 56 of the record. These facts lead this court to conclude, as Department of Homeland Security contends that the government is willing and capable of assisting this respondent. And then he goes on to say... But I'm not saying. Then he says, but I'm not saying that. This is sufficient for me to conclude it, but I'm not saying that. I'm basing my decision on something else, right? Well, he makes that finding a fact, and it stands. There was no clear error that the board found with that finding a fact. What the board did was it corrected his legal misstatement when he said that he understands that under withholding of removal, there is no requirement of unable or unwilling. And the board, in the footnote to its decision, says that was a legal error. On the immigration judge's part, we are authorized to review legal errors de novo and to correct them, and it did. And your opponent's not relying on it, so I won't spend more time on that. Just trying to find out how the board could reach that conclusion, given what the I.J. said. Thank you, Your Honor. I would point out, as Judge Kuczynski made the point earlier, that even in this country, the response that the El Salvadoran government made to petitioners' reports of spousal abuse would have been the same. She has the same official avenues available to her in El Salvador that she would have here had it happened here. And, in fact, in El Salvador, the government actually did respond by taking measures, including incarceration of her abuser, and was able to stop that abuse for the time that he was incarcerated. And, again, I note that Petitioner apparently, this spanned, I believe, sometime in the 1980s, the late 1980s. She didn't leave until 2001. And as far as the record is concerned, she reported two instances of abuse. Now, she says that it continued after the birth of her second, after they moved in together in, I believe it was 2000 approximately, not 2000, 1995. But there's nothing to indicate that she reported additional abuse or that she enlisted the aid of the government in order to respond to the continued abuse and the pattern of abuse. I see that my time is almost up. What was that page where you said I.J. made a finding as to ability to... It's page 56 and 57 of the record, Your Honor. And what lines? There's no lines, but it's towards the bottom of the page. It's the last sentence on page 56 carrying over to page 57. And what is this we're reading from? This was the oral decision? Yes. Okay. And you know what he said later. You acknowledge that he did say later, but I'm not finding that they're unable to unwill. I'm not saying they're unable to unwilling because I'm relying instead on this 51.1 percent. In the context of withholding of removal. Okay. Great. Unless the Court has any further questions? No. Thank you. We ask that the petition be denied. Thank you. Did you want to take a minute for a bottle? Yeah. There was actually, Your Honors, there was a factual question as to whether or not the restraining order had expired. And on page 243 of the record in the English translation to the restraining order, it does say that it continue active the protective remedies dictated by this tribunal for one year starting from the date of the present hearing. So it appears it's a one-year restraining order. I just have a question. The government counsel cited page 57, 56, 57. I have the same thing or what looks like the same thing on page 98. Are there two copies of the, this one I'm confused here. Yes. They're exactly the same document. They just appeared two different places in the record. Yes. Okay. That's okay. Yeah. No, I have that on page 97 and 98. It's the same thing, just two different copies. The discussion's on 57 and 58 and 97 and 98. Is that what you're saying? Same document. It's the same document. It's the same document. It just appeared twice in two places. Okay. That's fine. I was just confused about the pages. Okay. Thank you. This is how you will stand submitted.
judges: Kozinski, Gould, Hurwitz